ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| United States ex rel. R. JEFFREY WERTZ<br><br>Plaintiff,<br><br>vs.<br><br>RADIOTHERAPY CLINICS OF GEORGIA, LLC; RADIOTHERAPY OF GEORGIA, P.C.; PHYSICIAN ONCOLOGY SERVICES MANAGEMENT COMPANY, LLC; FRANK A. CRITZ, M.D. | CIVIL ACTION FILE NO.<br><br>1:08-CV-2244<br><br>FILED *IN CAMERA* AND UNDER SEAL   -GET<br><br>Jury Trial Requested |

## COMPLAINT

1.  This is an action by *qui tam* Relator R. Jeffrey Wertz, on behalf of himself and the United States Government, to recover penalties and damages from the false statements or records submitted or caused to be submitted by Radiotherapy Clinics of Georgia (hereinafter referred to as "RCOG"), Radiotherapy of Georgia, P.C., Physician Oncology Services Management Company, LLC (hereinafter referred to as "POS"), and/or Dr. Frank A. Critz (hereinafter "Critz")(collectively hereinafter, "Defendants"), to the United States Government in order to obtain payments of federal funds.

### JURISDICTION AND VENUE

2.  This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq*. (the "FCA").

3.  This Court has subject matter jurisdiction over this matter pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1345.

4. This Court has personal jurisdiction over the Defendants.

5. Venue is proper in this district under 28 U. S. C. §§ 1391(b), and 1391(c), and under 31 U.S.C. § 3732(a). The Defendants can be found, reside, and transact business within the district, and the acts proscribed by the FCA occurred within the district.

6. Relator is entitled to and demands trial by Jury.

## PARTIES

7. Relator R. Jeffrey Wertz (hereinafter "Relator") is a resident of Georgia and a United States citizen. Relator was employed by Defendants from March 11, 2002 through December 13, 2007. Relator is an experienced physicist certified by The American Board of Radiology with fourteen (14) years of experience working in radiation treatment for cancer patients.

8. Defendant RCOG is a Georgia Limited Liability Company with its principle place of business at Decatur, Georgia. RCOG provides radiation treatment for cancer patients.

9. Defendant RCOG is controlled and managed by Defendant POS, a Delaware limited liability company whose principle place of business is in Atlanta, Georgia.

10. Defendant Radiotherapy of Georgia, P.C. is a Georgia Corporation doing business in Georgia.

11. Defendant Dr. Frank Critz is a United States citizen. He resides in Georgia.

## GOVERNING REGULATIONS AND BACKGROUND

12.     Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*, establishes the Health Insurance for the Aged and Disabled Program, popularly known as the Medicare program. The Secretary of the United States Department of Health and Human Services ("HHS") administers the Medicare Program through the Centers for Medicare and Medicaid Services ("CMS"), a component of HHS.

13.     The Medicare program consists of several parts. Medicare Part A provides basic insurance for the costs of hospitalization and post-hospitalization care. 42 U.S.C. § 1395c-1395i-2 (1992). Medicare Part B is a federally subsidized, voluntary insurance program that covers certain non-hospital medical services and products including the treatments at issue in this complaint. 42 U.S.C. § 1395(k), 1395(i), 1395(s). Reimbursement for Medicare claims is made by the United States through CMS. CMS, in turn, contracts with private insurance carriers to administer and pay Medicare Part B claims from the Medicare Trust Fund. 42 U.S.C. § 1395(u). In this capacity, the carriers act on behalf of CMS. 42 C.F.R. § 421.5(b) (1994).

14.     In order to receive Medicare funds, enrolled suppliers, including Defendants, together with their authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and all applicable policies and procedures issued by the states.

15.     Among the rules and regulations which enrolled suppliers, including Defendants, agree to follow are to: (1) bill Medicare Carriers for only those covered

3

services which are medically necessary; (2) not bill Medicare Carriers for any services or items which were not performed or delivered in accordance with all applicable policies, nor submit false or inaccurate information relating to provider costs or services; (3) not engage in any act or omission that constitutes or results in over-utilization of services; (4) be fully licensed and/or certified under the applicable state and federal laws to perform the services provided to recipients; (5) comply with state and federal statutes, policies and regulations applicable to the Medicare Program; and (7) not engage in any illegal activities related to the furnishing of services to recipients.

16. At all times relevant to this Complaint, Defendants were participating Medicare providers. Defendants submitted claims for payment to Medicare for services and supplies.

17. All of the conduct alleged in this Complaint is alleged to have occurred "knowingly" or with reckless disregard, as those terms are defined in the False Claims Act, 31 U.S.C. § 3729 and related case law.

18. At all times relevant to this Complaint, Medicare constituted a significant source of revenue for Defendants.

## FACTUAL ALLEGATIONS

19. The allegations of the preceding paragraphs are incorporated herein by reference.

20. RCOG was formed about 30 years ago by Defendant Critz and has treated close to 10,000 patients with prostate cancer.

4

21. On information and belief, other named defendants were also related to and either controlled by or controlling RCOG and Critz such that their conduct gives rise to liability under the False Claims Act.

22. Dr. Critz ultimately developed and established his own technique for treating prostate cancer with a combination of implanting radioactive material (I-125 seeds, hereinafter "seeds") and utilizing external beam radiation therapy. Dr. Critz coined the name "ProstRcision" to market his treatment technique. On information and belief no other group or institution in the country treats prostate cancer based on Dr. Critz's technique. RCOG currently treats about 1000 prostate patients per year.

23. Of those treated, a significant number are insured through Medicare. Relator's job included inspecting patient charts to verify the prescriptions. Relator observed that a significant number of patients' charts indicated Medicare was the patient's insurer.

24. In typical prostate cancer treatment procedures that utilize radioactive seeds, a procedure (known as a Pre-Plan) is used to determine the appropriate number and activity of seeds that will be required and the location of the seeds in order to generate the desired customized isodose distribution. The Pre-Plan is then used to order the number of seeds to be implanted and is used in the operating room as the guide for the implant procedure.

25. According to Defendants, the unique ProstRcision method of treating prostate cancer obviates the need for a Pre-Plan. Defendants do not rely on the Pre-Plans

to determine the number and activity of seeds to be used.  Defendants do not use any Pre-Plan in surgery.

26.   Notwithstanding the fact that Pre-Plans are not used by Defendants' unique ProstRcision method, Defendants had and continue to have a practice of performing the Pre-Plan, billing Medicare for the Pre-Plan and then ignoring the Pre-Plan.  Defendants perform a Pre-Plan for every ProstRcision procedure it performs.  Defendants perform Pre-Plans for no reason other than to generate income, including income from Medicare.

27.   On multiple occasions Defendants informed Relator that information generated by the Pre-Plans was not used for its intended purpose and that Defendants deemed the Pre-Plans to be completely unnecessary medically, but that the Pre-Plans were a lucrative component of Defendants' business.

28.   In several instances, Defendants performed the Pre-Plans *after* the surgery.

29.   Originally Defendants used CPT code 77328 – Isodose Plan – to bill for the Pre-Plan.

30.   In the two or three years prior to the filing of this complaint, Defendants began running more enhanced Pre-Plans using CPT code 77295 – 3-D Reconstruction.  The 3-D reconstruction Pre-Plan allowed for greater reimbursement from Medicare.

31.   Defendants began using the enhanced 3-D Pre-Plan solely for the purpose of billing and collecting larger amounts of money from insurers, including Medicare.

### Fraudulent Schemes

32.   Defendants billed Medicare for Pre-Plans which Defendants themselves believed were not medically necessary.

33. Defendants billed Medicare for Pre-Plan services which were not utilized. Defendants provided false or inaccurate information to Medicare regarding these.

34. Defendants over utilized Pre-Plans by performing them, knowingly disregarding them and still billing Medicare for the same.

35. On information and belief, Defendants have billed Medicare, or caused Medicare to be billed for several hundreds of patients' Pre-Plans.

36. Relator first became aware of this overbilling and misuse of Pre-Plans in 2002, shortly after being hired by Defendants.

37. On or about July 19, 2007, Relator reported to Defendants through Defendants' representative physicians and administrators that he believed it was improper for Defendants to bill for the unused Pre-Plans.

38. Shortly after Relator reported that Defendants were improperly billing for Pre-Plans, Defendants began to retaliate against him. Ultimately, Relator was terminated on or about December 13, 2007.

## COUNT I

## FALSE CLAIMS ACT VIOLATIONS

39. The prior allegations of this Complaint are incorporated herein by reference.

40. Defendants, by and through their agents, officers and employees, presented and caused to be presented to officers or employees of the United States false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1).

41. Defendants, by and through its agents, officers and employees, presented or caused to be presented to officers and employees of the United States false records or statements to get false claims paid in violation of 31 U.S.C. § 3729 (a)(2).

42. Defendants, by and through its agents, officers and employees, conspired to defraud the United States Government by getting false or fraudulent claims allowed or paid in violation of 31 U.S.C. §3729(a)(3).

43. The United States has been damaged as a result of Defendant's violations of the False Claims Act in an amount to be proven at trial. The United States is entitled to this sum as reimbursement for monies obtained by the Defendant for fraudulent claims submitted to the United States.

44. The United States is entitled to three times the total damages sustained as a result of Defendant's violations of 31 U.S.C. § 3729(a).

45. The United States is entitled to a civil penalty of between $5,500 and $11,000 as required by 31 U.S.C. § 3729(a) for each of Defendant's false and/or fraudulent claims.

46. Relator is entitled to reasonable costs and attorneys' fees pursuant to 31 U.S.C. § 3730 (d)(1).

## COUNT II
## RETALIATION

47. The prior allegations of this Complaint are incorporated herein by reference.

48. As set forth at length above, Relator was fired from his employment in retaliation for protected activities including investigating and opposing fraudulent practices at RCOG, in violation of 31 U.S.C. § 3730(h).

49. Pursuant to this statute, Relator is entitled to be reinstated at the same level of seniority he would have enjoyed absent Defendants' illegal acts; an award of two times the amount of back pay (including bonus) plus interest; compensation for special damages; and litigation costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator R. Jeffrey Wertz prays that:

(a) Defendants each be assessed a civil penalty of not less than $5,500 nor more than $11,000 for each act committed in violation of the False Claims Act;

(b) Defendants each be held jointly and severally liable for three times the actual damages suffered by the Federal Government as a result of the Defendants' violations of the False Claims Act;

(c) Relator be awarded not less than 15 per cent nor more than 30 per cent of any proceeds resulting from this action or any resulting settlement, pursuant to 31 U.S.C. § 3730(d);

(d) Relator be awarded all damages and any other compensatory amounts necessary to make Relator whole from Defendants' retaliation pursuant to 31 U.S.C. § 3730(h);

(e) Defendants each be assessed jointly and severally an additional sum

sufficient to compensate Relator for all expenses of litigation incurred in this action, including reasonable attorney's fees;

(f)  Defendants be ordered to reinstate Relator with the level of seniority he would have enjoyed but for the retaliation; and

(g)  Any and all other relief as the Court deems just and proper.

Respectfully submitted this 10th day of July, 2008.

Mike Bothwell
Georgia Bar No. 069920
Attorney for Relator

**BOTHWELL HARRIS**

304 Macy Drive
Roswell, GA  30075
(770) 643-1606 (Telephone)
(770) 643-1442
Attorneys for Relator R. Jeffrey Wertz